**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

DOUGLAS CARSTENS,
an individual,

                                               Case No.:

      Plaintiff,

v.

ANMED HEALTH,
a foreign non-profit corporation,
MEDICAL DATA SYSTEMS, INC., d/b/a,
MEDICAL REVENUE SERVICE,
a Florida for-profit corporation, and
GLOBAL FINANCIAL SERVICES GROUP, INC.,
d/b/a DATATRAC RECEIVABLES RECOVERY,
a foreign for-profit corporation,

      Defendants.

_____/

## VERIFIED COMPLAINT

    **COMES NOW**, Plaintiff, DOUGLAS CARSTENS (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, ANMED HEALTH (hereinafter, "AMH"), MEDICAL DATA SYSTEMS, INC., d/b/a MEDICAL REVENUE SERVICE (hereinafter, "MDS"), and GLOBAL FINANCIAL SERVICES GROUP, INC., d/b/a DATATRAC RECEIVABLES RECOVERY (hereinafter, "DRR") (hereinafter collectively, "Defendants").  In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

    This is an action for damages for violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA"), the Fair Debt Collection Practices Act, 15 United States Code, Section 1692a, *et seq*. (hereinafter, the "FDCPA"), and the Telephone Consumer Protection Act, 47 United States Code, Section 227 (hereinafter, the "TCPA").

## JURISDICTION, VENUE & PARTIES

1.      Jurisdiction of this Court arises under 15 United States Code, Section 1692k(d), 47 United States Code, Section 227(b)(3), 28 United States Code, Section 1337, and supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.

2.      Venue in this District is proper because Defendants transact business in this District, and certain conduct complained of occurred from this District.

3.      At all material times herein, AMH is a foreign non-profit corporation existing under the laws of the state of South Carolina that, itself and through its subsidiaries, regularly extends medical services in Oconee County, South Carolina, and collects debts associated with the same.

4.      At all material times herein, MDS is a Florida for-profit corporation existing under the laws of the state of Florida with its principle place of business located at 2001 9th Ave., Suite 312, Vero Beach, Florida 32960, that, itself and through its subsidiaries, regularly collects debts due to another.

5.      At all material times herein, DRR is a foreign for-profit corporation existing under the laws of the state of Delaware that, itself and through its subsidiaries, regularly collects debts due to another.

## GENERAL ALLEGATIONS

6.      At all material times herein, AMH is a "creditor" as defined by Florida Statutes, Section 559.55(5).

7.      At all material times herein, MDS and DRR are each a "debt collector" as defined by Florida Statutes, Section 559.55(7) and 15 United States Code, Section 1692a(6).

8.      At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8) and 15 United States Code, Section 1692a(3).

9.      MDS and DRR each use interstate mail while engaging in a business the principal purpose of which is the collection of debts allegedly due another.  MDS and DRR are each also an entity who regularly collects or attempts to, directly or indirectly, collect debts owed or due, or asserted to be owed or due, another from consumers in Oconee County, South Carolina.

10.     At all material times herein, Defendants attempt to collect a debt, including but not limited to, a balance allegedly due for medical services, referenced by AMH account numbers ending -7583, -7410, and -7706, and DRR reference numbers ending -7087 and -7088  (hereinafter collectively, the "Debt").

11.     At all material times herein, the Debt is consumer debt, an obligation resulting from a transaction for goods or services incurred primarily for personal, household or family use.

12.     At all material times herein, MDS and DRR each received the Debt for collection– and at all times herein collected the Debt—after the Debt was in default.

13.     At all material times herein, MDS is a separate entity from AMH.

14.     At all material times herein, Defendants are each a "person" subject to Florida Statutes, Section 559.72.  *See* Fla. Stat. §§ 559.55(5), (7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

15.     At all material times herein, Defendants' conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2) and 15 United States Code, Section 1692a(2).

16.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

17.     All necessary conditions precedent to the filing of this action occurred or have been

waived by Defendants.

## **FACTUAL ALLEGATIONS**

18.     MDS' made telephone calls, as more specifically alleged below, to Plaintiff's cellular telephone number 402.XXX.5157 (hereinafter, "Cellular Telephone") using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

19.     Plaintiff is the owner, regular user, and possessor of a Cellular Telephone with the assigned number 402.XXX.5157.

20.     At no time herein did Defendants possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

21.     Further, if Defendants contend they possessed such consent, Plaintiff revoked such consent the moment AMH received the Cease and Desist Letter, as defined herein, which advised Defendants of Plaintiff's dispute of the Debt and expressly revoked any prior consent for AMH or its debt collectors to contact Plaintiff.

22.     Additionally, if Defendants contend they made the below-referenced phone calls for "informational purposes only," they nevertheless lacked the required prior express written consent necessary to place such informational calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

23.     MDS made its telephone calls, as described below, from telephone number 866.213.7755.

24.     After each call MDS made to Plaintiff's Cellular Telephone that Plaintiff did not answer, MDS left a voicemail message using an APV in an attempt to collect the Debt.

25.     Each of the immediately-aforementioned voicemails failed to identify MDS as the

caller.

26.     On or about August 31, 2015, Plaintiff visited AMH's emergency room and received medical services from AMH.

27.     When Plaintiff first arrived at AMH's hospital, Plaintiff asked one of AMH's employees or representatives to confirm that AMH accepted his health insurance and that AMH was an in-network provider for purposes of his health insurance.  After examining Plaintiff's health insurance card, AMH's employee or representative confirmed AMH was in-network and accepted Plaintiff's health insurance.

28.     On or about September 1, 2015, Plaintiff returned to AMH's hospital and received additional medical services from AMH.

29.     Additionally, AMH's employees or representatives repeatedly claimed that Plaintiff owed co-pays of $100.00 for each service he received, further affirming to Plaintiff that AMH had an in-network contract with Plaintiff's health insurance provider.

30.     AMH, however, does not have an in-network contract with Plaintiff's health insurance provider, and AMH knew the aforementioned representations to Plaintiff to the contrary were false when AMH's employees or representatives made them.

31.     On or about September 19, 2015, AMH sent Plaintiff a billing statement in an attempt to collect the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "A."

32.     The immediately-aforementioned billing statement did not identify a date of service, did not provide any itemization of charges, and asserted a greater amount due than if AMH was an in-network provider for Plaintiff's health insurance under Plaintiff's health insurance plan.

33.     On or about September 30, 2015, AMH sent Plaintiff a billing statement in an

5

attempt to collect the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "B."

34.     The immediately-aforementioned billing statement did not identify a date of service, did not provide any itemization of charges, and asserted a greater amount due than if AMH was an in-network provider for Plaintiff's health insurance under Plaintiff's health insurance plan.

35.     On or about October 5, 2015, Plaintiff sent AMH a certified letter disputing the amount AMH asserted due on the Debt, advising AMH of the assurances he received from an AMH employee regarding AMH accepting his health insurance, and offering to pay $300.00 to settle the entire Debt (hereinafter, "Accord and Satisfaction Letter").  Please see attached a true and correct copy of the Accord and Satisfaction Letter and certified mail receipt labeled as Exhibit "C."

36.     Plaintiff enclosed a check made out to AMH in the amount of $300.00 for full settlement of the Debt with the Accord and Satisfaction Letter which explicitly advised AMH that AMH was only to cash said check if AMS accepted $300.00 as payment of the Debt in full (hereinafter, "Settlement Check").

37.     On or about October 14, 2015, AMH sent Plaintiff a billing statement in an attempt to collect the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "D."

38.     The immediately-aforementioned billing statement did not identify a date of service, did not provide any itemization of charges, and asserted a greater amount due than if AMH was an in-network provider for Plaintiff's health insurance under Plaintiff's health insurance plan.

39.     On or before October 15, 2015, AMH turned the Debt over to MDS for servicing, collection, or both.

40.     When AMH turned the Debt over to MDS for servicing, collection, or both, MDS advised MDS of Plaintiff's Accord and Satisfaction Letter and Settlement Check.

41.     On or about October 15, 2015, MDS made a call, on AMH's behalf—and with AMH's knowledge, consent, and approval—to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

42.     The immediately-aforementioned call was an indirect attempt by AMH to collect the Debt.

43.     Plaintiff's wife answered the immediately-aforementioned call and MDS' employee or representative falsely identified himself as from "AnMed Business Office" requesting to speak with Plaintiff.  MDS' employee or representative did not disclose that he was calling on behalf of a third-party debt collector and instead represented himself as an employee of AMH.

44.     On or about October 19, 2015, AMH cashed the Settlement Check Plaintiff enclosed with the Accord and Satisfaction Letter, accepting $300.00 as payment in full for the Debt.  Please see attached proof of AMH's deposit of the Settlement Check from Plaintiff's bank labeled as Exhibit "E."

45.     Despite the Accord and Satisfaction Letter clearly stating that Plaintiff offered the Settlement Check as payment in full for the entire Debt—as well as the fact that the Settlement Check contained a clear and conspicuous restrictive enforcement advisement—AMH erroneously applied $100.00 to each of the accounts that comprise the Debt and continued to attempt to collect remaining illegitimate Debt from Plaintiff (hereinafter, the alleged remaining portion of the Debt shall be referred to as the "Illegitimate Debt."

46.     On or about October 22, 2015, AMH sent Plaintiff a billing statement in an attempt to collect the Illegitimate Debt, despite accepting the Settlement Check as payment in full for the

Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "F."

47.     On or about November 3, 2015, AMH sent Plaintiff a billing statement in an attempt to collect the Illegitimate Debt, despite accepting the Settlement Check as payment in full for the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "G."

48.     On or about November 17, 2015, AMH sent Plaintiff a billing statement in an attempt to collect the Illegitimate Debt, despite accepting the Settlement Check as payment in full for the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "H."

49.     On or about November 23, 2015, AMH sent Plaintiff a billing statement in an attempt to collect the Illegitimate Debt, despite accepting the Settlement Check as payment in full for the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "I."

50.     On or about December 4, 2015, AMH sent Plaintiff a billing statement in an attempt to collect the Illegitimate Debt, despite accepting the Settlement Check as payment in full for the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "J."

51.     On or about December 18, 2015, AMH sent Plaintiff a billing statement in an attempt to collect the Illegitimate Debt, despite accepting the Settlement Check as payment in full for the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "K."

52.     On or about December 27, 2015, despite AMH's deposit of the Settlement Check, MDS made a call, on AMH's behalf—and with AMH's knowledge, consent, and approval—to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Illegitimate Debt.

53.     The immediately-aforementioned call was an indirect attempt by AMH to collect the Illegitimate Debt.

54.     On or about January 19, 2016, Plaintiff sent AMH a certified letter *again* disputing the Debt, demanding AMH cease contacting Plaintiff in an attempt to collect the Debt, and advising AMH of the settlement of the Debt per AMH's deposit of the Settlement Check (herein, "Cease and Desist Letter").  Please see a true and correct copy of the Cease and Desist Letter and certified mail receipt labeled as Exhibit "L."

55.     AMH advised its agent, MDS, of the Cease and Desist Letter.

56.     On or about January 19, 2016, AMH sent Plaintiff a billing statement in an attempt to collect the Illegitimate Debt, despite accepting the Settlement Check as payment in full for the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "M."

57.     On or about January 25, 2016, despite AMH's deposit of the Settlement Check and receipt of the Cease and Desist Letter, MDS made a call, on AMH's behalf—and with AMH's knowledge, consent, and approval—to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Illegitimate Debt.

58.     The immediately-aforementioned call was an indirect attempt by AMH to collect the Illegitimate Debt.

59.     On or about February 1, 2016, AMH sent Plaintiff a billing statement in an attempt to collect the Illegitimate Debt, despite accepting the Settlement Check as payment in full for the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "N."

60.     On or about February 7, 2016, despite AMH's deposit of the Settlement Check and receipt of the Cease and Desist Letter, MDS made a call, on AMH's behalf—and with AMH's knowledge, consent, and approval—to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or

9

an APV in an attempt to collect the Illegitimate Debt.

61.     The immediately-aforementioned call was an indirect attempt by AMH to collect the Illegitimate Debt.

62.     On or about February 15, 2016, AMH sent Plaintiff a billing statement in an attempt to collect the Illegitimate Debt, despite accepting the Settlement Check as payment in full for the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "O."

63.     On or about February 21, 2016, despite AMH's deposit of the Settlement Check and receipt of the Cease and Desist Letter, MDS made a call, on AMH's behalf—and with AMH's knowledge, consent, and approval—to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Illegitimate Debt.

64.     The immediately-aforementioned call was an indirect attempt by AMH to collect the Illegitimate Debt.

65.     On or about February 26, 2016, at approximately 5:48 p.m. ET, despite AMH's deposit of the Settlement Check and receipt of the Cease and Desist Letter, MDS made a call, on AMH's behalf—and with AMH's knowledge, consent, and approval—to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Illegitimate Debt.

66.     The immediately-aforementioned call was an indirect attempt by AMH to collect the Illegitimate Debt.

67.     On or about March 4, 2016, at approximately 6:13 p.m. ET, despite AMH's deposit of the Settlement Check and receipt of the Cease and Desist Letter, MDS made a call, on AMH's behalf—and with AMH's knowledge, consent, and approval—to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Illegitimate Debt.

68.     The immediately-aforementioned call was an indirect attempt by AMH to collect

the Illegitimate Debt.

69.     On or about March 11, 2016, at approximately 6:13 p.m. ET, despite AMH's deposit of the Settlement Check and receipt of the Cease and Desist Letter, MDS made a call, on AMH's behalf—and with AMH's knowledge, consent, and approval—to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Illegitimate Debt.

70.     The immediately-aforementioned call was an indirect attempt by AMH to collect the Illegitimate Debt.

71.     On or about March 18, 2016, at approximately 6:03 p.m. ET, despite AMH's deposit of the Settlement Check and receipt of the Cease and Desist Letter, MDS made a call, on AMH's behalf—and with AMH's knowledge, consent, and approval—to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Illegitimate Debt.

72.     The immediately-aforementioned call was an indirect attempt by AMH to collect the Illegitimate Debt.

73.     On or about March 24, 2016, AMH sent Plaintiff a billing statement in an attempt to collect the Illegitimate Debt, despite accepting the Settlement Check as payment in full for the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "P."

74.     On or before March 30, 2016, AMH turned the Illegitimate Debt over to DRR for servicing, collection, or both.

75.     On or about March 30, 2016, DRR sent Plaintiff two (2) collection letters in an attempt to collect the Illegitimate Debt.  Please see attached true and correct copies of both collection letters labeled as Composite Exhibit "Q."

76.     On or about April 8, 2016, at approximately 3:15 p.m. ET, Plaintiff called MDS in an attempt to confirm the entity repeatedly calling him and again demanded that the auto-dialed

collection calls to his cellular telephone cease.

77.     During the immediately-aforementioned call, MDS' employee or representative that took the call, in response to Plaintiff's inquiry to identify the entity for which she worked, refused to answer whether her employer was a collection agency or debt collector.  Said employee also advised Plaintiff she would connect him to a supervisor, placed Plaintiff on hold for two minutes and then disconnected Plaintiff's call.

78.     On or about April 11, 2016, Plaintiff sent Defendants AMH and DRR a certified letter again disputing the Illegitimate Debt, revoking any purported consent Defendants believed they possessed to call Plaintiff's Cellular Telephone, and demanded Defendants cease contacting him in attempts to collect the Illegitimate Debt (hereinafter, "Dispute Letter").  Please see attached a true and correct copy of the Dispute Letter and certified mail receipts labeled as Exhibit "R."

79.     AMH advised MDS of Plaintiff's Dispute Letter and Plaintiff's demand that Defendants cease contacting him.

80.     On or about April 11, 2016, Plaintiff sent DRR a certified letter requesting verification of the Illegitimate Debt (hereinafter, "Debt Verification Letter").  Please see attached a true and correct copy of the Debt Verification Letter and certified mail receipt labeled as Exhibit "S."

81.     DRR never responded to Plaintiff's Debt Verification Letter.

82.     On or about May 12, 2016, AMH's employee or representative "Sherri" called Plaintiff's Cellular Telephone and left Plaintiff a voicemail message in an attempt to collect the Illegitimate Debt.

83.     During the immediately-aforementioned voicemail message, "Sherri" asserted that Plaintiff's failure to write "payment in full" on the face of the Settlement Check resulted in AMH

cashing the Settlement Check without reviewing the Accord and Satisfaction Letter.  "Sherri" also asserted that Plaintiff still owed the Illegitimate Debt, advised Plaintiff AMH placed the Illegitimate Debt with a collection agency, and identified herself as the "collections litigation coordinator" for AMH and requested Plaintiff return her call.

84.     On or about May 15, 2016, Plaintiff sent AMH *another* certified letter specifically to "Sherri's" attention reiterating his dispute of the Illegitimate Debt, *again* explaining that he followed all legal requirements in submitting the Accord and Satisfaction Letter and Settlement Check to AMH, and *again* demanding statements for all three accounts that comprise the Debt demonstrating AMH considered the Debt paid in full.  Please see a true and correct copy of said certified letter and certified mail receipts labeled as Exhibit "T."

85.     On or about July 18, 2016, AMH's employee or representative "Sherri" again called Plaintiff's Cellular Telephone and left Plaintiff a voicemail message in an attempt to collect the Illegitimate Debt.  Sherri did not acknowledge Plaintiff's proper dispute of the Illegitimate Debt and again requested Plaintiff return her call.

86.     As of the date of the filing of this Complaint, AMH has not provided Plaintiff with account statements properly reflecting the Debt as paid in full.

87.     As of the date of the filing of this Complaint, DRR has not responded to Plaintiff's Debt Verification Letter.

88.     Plaintiff retained Leavengood, Dauval, Boyle & Meyer, P.A. (hereinafter, "Undersigned Counsel") on or about September 7, 2016 with respect to the Debt and Defendants' collection of the Illegitimate Debt.

89.     Plaintiff retained Undersigned Counsel for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their

services.

90.     As a direct result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that his Accord and Satisfaction of the Debt with AMH and subsequent repeated disputes were wholly ineffective, that his repeated cease and desist demands were wholly ineffective, and that the frequent, repeated Illegitimate Debt collection attempts would simply have to be endured.

91.     Florida Statutes, Section 559.77 provides for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, an award of attorneys' fees, and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

92.     United States Code, Title 15, Section 1692k provides for the award of up to $1,000.00 statutory damages, actual damages, and an award of attorneys' fees, and costs to Plaintiff, should Plaintiff prevail in this matter against MDS and DRR.

93.     United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call placed using any automatic telephone dialing system or an artificial or pre-recorded voice to Plaintiff's Cellular Telephone in violation of the TCPA or the regulations proscribed thereunder.

94.     Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call placed using any automatic telephone dialing system or an artificial or prerecorded voice to Plaintiff's Cellular Telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

95.     As of the date of this complaint, Defendants have not initiated a law suit in an effort to collect the Illegitimate Debt.  Likewise, Defendants have not obtained a final judgment regarding the Illegitimate Debt.

## COUNT ONE:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## <u>VIOLATION OF FLORDA STATUTES, SECTION 559.72(7)</u>

Plaintiff re-alleges paragraphs one (1) through ninety-five (95) as if fully restated herein and further states as follows:

96.     Defendants AMH and MDS are subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by collecting consumer Debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

97.     Specifically, despite Plaintiff's Accord and Satisfaction, AMH's deposit of the Settlement Check, and receipt of the Cease and Desist Letter, AMH continued to attempt to collect the Illegitimate Debt itself and through the use of two different debt collectors.

98.     Further, despite Plaintiff's Accord and Satisfaction, AMH's deposit of the Settlement Check, and receipt of the Cease and Desist Letter, MDS, on AMH's behalf—and with AMH's consent, knowledge, and approval—repeatedly called Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV in its attempts to collect the Illegitimate Debt.

99.     Despite Plaintiff's repeated attempts to enforce his consumer rights via the Accord and Satisfaction, disputing the Illegitimate Debt, and repeatedly demanding that Defendants cease calling his Cellular Telephone, Defendants continued to send billing and statements and make calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

100.    Defendant's actions intended to abuse and harass Plaintiff into paying the Illegitimate Debt by leading Plaintiff to believe that despite invoking the above-referenced consumer rights, the unlawful collection activity would continue until the Illegitimate Debt was satisfied.

101.    Defendant's willful and flagrant violation of, *inter alia*, the Florida Consumer

Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

102.    As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**<u>VIOLATION OF FLORDA STATUTES, SECTION 559.72(9)</u>**

Plaintiff re-alleges paragraphs one (1) through ninety-five (95) as if fully restated herein and further states as follows:

103.    Defendants are subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the Illegitimate Debt with knowledge that the Illegitimate Debt is not legitimate or by asserting the existence of some legal right when Defendants knows that the right does not exist.

104.    Specifically, Plaintiff 's Accord and Satisfaction Letter and Settlement Check, and AMH's cashing the Settlement Check in full acceptance of Plaintiff's Accord and Satisfaction, AMH continued to assert that Plaintiff owed the alleged full balance due on the Debt and continued to send Plaintiff billing statements.  Further, AMH turned the Illegitimate Debt over to MDS and DRR—and advised them of the Accord and Satisfaction—in attempt to procure additional payment from Plaintiff.

105.    Defendants' conduct, as described above, falsely asserts the right to continually attempt to collect the Illegitimate Debt from Plaintiff despite AMH depositing the Settlement Check in full satisfaction of the Debt.  Defendants knew they did not have such a right, thus violating the provisions of Florida Statutes, Section 559.72(9).

106.    As a direct and proximate result of each Defendant's actions, Plaintiff sustained

damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1692d(5)-(6)</u>**

Plaintiff re-alleges paragraphs one (1) through ninety-five (95) as if fully restated herein and further states as follows:

107.    MDS is subject to, and violated the provisions of, 15 United States Code, Section 1692d(5) and 1692d(6) by causing a telephone to ring or engaging Plaintiff in telephone conversation repeatedly with the intent to annoy, harass or abuse any person at the called number, and by consistently contacting Plaintiff without meaningful, truthful disclosure of its identity.

108.    Specifically, MDS repeatedly called Plaintiff's Cellular Telephone and left Plaintiff voicemails in an attempt to collect the Illegitimate Debt, despite Plaintiff no longer owing any amount due on the Debt as a result of the Accord and Satisfaction Letter and Settlement Check, and despite Plaintiff's repeated disputes of the Illegitimate Debt and demands that calls to his Cellular Telephone cease.

109.    Further, despite MDS existing as a separate entity from AMH—and acting as a third-party debt collector hired by AMH—MDS' employee or representative identified himself to Plaintiff's wife on MDS' first call to Plaintiff's Cellular Telephone as a member of "AnMed Business Office," and further failed to correctly identify itself in subsequent calls and voicemail messages to Plaintiff's Cellular Telephone.

110.    As a direct and proximate result of MDS' actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT FOUR:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e(2)(A)</u>**

Plaintiff re-alleges paragraphs one (1) through ninety-five (95) as if fully restated herein and further states as follows:

111.    MDS and DRR are subject to, and violated the provisions of, 15 United States Code, Section 1692e(2)(A) by falsely representing the amount, legal status or character of the Debt.

112.    Specifically, Plaintiff 's Accord and Satisfaction Letter and Settlement Check, and AMH's cashing the Settlement Check in full acceptance of Plaintiff's Accord and Satisfaction, and AMH advising MDS and DRR of the same, MDS and DRR each continued to attempt to collect the Illegitimate Debt from Plaintiff and falsely represented to Plaintiff that he still owed the Illegitimate Debt.

113.    As a direct and proximate result of MDS' and DRR's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT FIVE:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e(11)</u>**

Plaintiff re-alleges paragraphs one (1) through ninety-five (95) as if fully restated herein and further states as follows:

114.    MDS is subject to and violated the provisions of 15 United States Code, Section 1692e(11) by failing to initially disclose that Defendant is attempting to collect a debt and that any information obtained will be used for that purpose.

115.    Specifically, MDS' employee or representative failed to identify that he was calling on behalf of a third-party debt collector and instead falsely represented himself as an employee of the original creditor, AMH during its initial call to Plaintiff's Cellular Telephone.

116.    Further, MDS failed in subsequent communications, namely the pre-recorded voicemail messages MDS left after each call it made to Plaintiff's Cellular Telephone, to identify

itself and disclose that the communication was from a debt collector.

117.    These disclosure requirements apply to written as well as oral communications from debt collectors.  *See Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643 (U.S. Dist. 2006); *Belin v. Litton Loan Servicing, LP*, 2006 WL 1992410 (M.D. Fla. July 14, 2006).

118.    As a direct and proximate result of MDS' actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT SIX:**
**TELEPHONE CONSUMER PROTECTION ACT-**
**VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)**

Plaintiff re-alleges paragraphs one (1) through ninety-five (95) as if fully restated herein and further states as follows:

119.    MDS and AMH are subject to, and violated the provisions of, 47 United States Code, Section 227 (b)(1)(A) by using an automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice to call a telephone number assigned to a cellular telephone service without Plaintiff's prior express consent.

120.    MDS, on AMH's behalf—and with AMH's consent, knowledge, and approval—used an automatic telephone dialing system or an artificial or pre-recorded voice to call Plaintiff's Cellular Telephone *at least* nine (9) times.

121.    At no time did AMH or MDS possess Plaintiff's prior express consent to call Plaintiff on his Cellular Telephone.

122.    Plaintiff never provided AMH or MDS with his Cellular Telephone number or consent for MDS to call his Cellular Telephone using an ATDS, a PTDS, or an APV.

123.    Further, to the extent AMH or MDS contend they possessed such consent, such consent was revoked the moment the Debt was satisfied via the Accord and Satisfaction Letter and

Settlement Check, and even further when AMH received the Cease and Desist Letter—and advised MDS of the same—which again advised Defendants of Plaintiff's dispute of the Illegitimate Debt and expressly revoked any prior consent for AMH or its debt collectors to contact Plaintiff.

124. The phone calls MDS made, on AMH's behalf—and with AMH's consent, knowledge, and approval—complained of herein are the result of a repeated willful and knowing violation of the TCPA.

125. As a direct and proximate result of AMH's and MDS' conduct, Plaintiff suffered:

a.    The periodic loss of his cellular phone service;

b.    Lost material costs associated with the use of peak time cellular phone minutes allotted under his cellular phone service contract; and

c.    Stress, anxiety, loss of sleep, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing calls placed in violation of the TCPA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against each Defendant declaring that Defendants violated the FCCPA;

b.    Judgment against each Defendant for maximum statutory damages for violations of the FCCPA;

c.    Judgment against MDS and DRR for maximum statutory damages for violations of the FDCPA;

d.    Judgment against AMH and MDS for statutory damages in the amount of

$500.00 for each of MDS' telephone calls made on AMH's behalf that violated the TCPA;

  e.  Judgment against AMH and MDS for treble damages in the amount of an additional $1,000.00 for each telephone call MDS made on AMH's behalf that violated the TCPA for which MDS acted knowingly and/or willfully;

  f.  Actual damages in an amount to be determined at trial;

  g.  Punitive damages in an amount to be determined at trial;

  h.  An award of attorneys' fees and costs; and

  i.  Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

      Respectfully submitted,

      **LEAVENLAW**

      */s/ Aaron M. Swift*
      □ **Ian R. Leavengood, Esq., FBN 0010167**
      **[X] Aaron M. Swift, Esq., FBN 093088**
      □ **Gregory H. Lercher, Esq., FBN 0106991**
      Northeast Professional Center
      3900 First Street North, Suite 100
      St. Petersburg, FL 33703
      Phone: (727) 327-3328
      Fax: (727) 327-3305
      consumerservice@leavenlaw.com
      aswift@leavenlaw.com
      glercher@leavenlaw.com
      *Attorneys for Plaintiff*

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF SOUTH CAROLINA     )
                                            )
COUNTY OF _*Oconee*_         )

Plaintiff Douglas Carstens, having first been duly sworn and upon oath, deposes and says as follows:

1.  I am a Plaintiff in this civil proceeding.

2.  I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3.  I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4.  I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5.  I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6.  Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7.  Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

_Douglas Carstens_
Douglas Carstens

Subscribed and sworn to before me
this _6_ day of _Oct_ , 2016.

_Notary signature_
Notary Public

My Commission Expires:                     Proof of I.D.: _____

**4-9-25**

19